## COLUMBUS ALEXANDER Et Al.

*vs.*

## HENRY DOUGLASS.

1. A tenant in common cannot purchase an outstanding tax title to the common property and hold it against his cotenants. In such a case he will be deemed to hold as trustee for the benefit of all.
2. But he will be allowed for whatever permanent improvements he may have placed upon the property whilst in his possession, as well as his costs and expenses in the purchase of the tax title, and be charged on the other hand for the use and occupation of the land.

Special Term. In Equity. No. 319. Decided November 18, 1867. Affirmed in General Term, February 8, 1868.

BILL in equity to remove a cloud from complainant's title to square No. 90 in the City of Washington.

THE FACTS are stated in the opinion.

MR. W. S. Cox, for plaintiff.

MR. W. B. WEBB, for defendant.

MR. JUSTICE WYLIE delivered the opinion of the Court:

John Douglass, senior, died some years previous to the origin of the present controversy, intestate, and seized of square, No 90 in this city. The title descended to his three sons, John, Henry and William as coparceners, under the act of descents of 1786.

In 1855, White & Bro. obtained two judgments against William Douglass, amounting, with principal, interest and costs, on the 20th of June, 1864, to $1,318.62.

Under these judgments or one of them rather, an execution was issued which was levied on the individual interest of William in this piece of land, and on the 20th of June, 1864; that interest was sold by the marshal to Columbus

Alexander, one of the complainants, for the sum of $1,475 and the money was paid and the deed delivered.

Thus the property became vested in John and Henry Douglass and Columbus Alexander as tenants in common.

But Henry Douglass now, it seems, is seeking to repudiate this tenancy in common, by which he has an interest of one third only in the property, and sets up a claim to the whole under a tax title obtained as follows:

In 1860, the whole property consisting of three lots was sold for the taxes, when it was purchased by one S. H. Platt, and on the 20th of August, 1862, Platt obtained his tax deed from the corporation. The amount paid by Platt for the square was the sum of $17.35 for land and improvements. On 29th April, 1864, Henry Douglass bought from Platt his tax title to this square, consisting of three lots, and also to four lots in square 91, for the sum of $180— $90 for each.

The question for decision is whether he can be permitted by a court of equity, thus to oust his cotenants in common, and get for himself this large property, worth many thousands of dollars, for ninety dollars paid to Platt, who had bought it for $17.35 two years before.

If he can, this Court may as well cease its efforts to arrest fraud, and suppress injustice.

In the beginning, whilst the three brothers were all copaceners of the property, the taxes were allowed to remain unpaid for one year, and this was followed by the sale of the property to Platt. Whose delictum was it that this took place? It was the joint fault of the three, Henry one of them. It was his own business to see that the taxes were paid as much as that of either of his brothers. It was his duty to pay them and then compel contribution from John and William, and the law would have been prompt to aid him in such a case.

Had the property been bought in by himself at the tax

sale, he could not have pretended for a moment that he had a right to claim it as his own.

A coparcener, a partner, a tenant in common or joint tenant, in paying off a charge or incumbrance on the common property, does so for the common interest, and if he be compelled to use his own funds for that purpose, he can and must look to his fellow owners for contribution. He is a trustee for the common benefit. This doctrine cannot be questioned. It is laid down in all the text books, and has been declared in the recent case of Rothwell vs. Dewees, 2 Black R. 613.

Having by his own fault allowed the property to be sold for the taxes, and bought by Platt, his repurchase from Platt, was nothing more than the removal of an incumbrance or charge upon the lots, which it was as much his duty to effect as that of any of his cotenants. In Fonblanque's Eq. Book 2d., ch. 6 Sect. 5, he says: "Lastly a trust is revived by a repurchase of the trustee, although a fine passed, for it being but a conveyance, it did not extinguish or separate the trust, but transferred both together, and in the gift of the land he gives all the interests and demands by reason of the land. And so where a man wrongfully possesses himself of my goods, and sells them in market overt; if he afterwards buys these goods again, I may seize them in his custody, Bovey vs. Smith, 2 Ch. Ca., 126; 1 Vern. 60." This to be sure is an example of very refined and artificial reasoning in support of a plain and honest principle. But the principle must command our approbation, independently of these reasons, for its influence in support of justice and fair dealing, and in hostility to fraud and covin.

In 2 Story's Equity, Section 1264, the same doctrine is laid down. "Wherever a trustee is guilty of a breach of trust by a sale of the trust property to a *bona fide* purchaser for a valuable consideration without notice, the trust in the property is extinguished. But if afterwards he should repurchase, or otherwise become entitled to the same prop-

erty, the trust would revive and reattach to it; for it will not be tolerated in equity that a party shall by his own wrongful act, acquire an absolute title to that which he is in conscience bound to preserve for another. In equity, even more strongly than at law, the maxim prevails, that no man shall take advantage of his own wrong. And, even at law, if a disseissor aliens the land, and a descent is cast, and afterwards the disseissor re-acquires the land by descent or purchase, the disseissor may re-enter, although otherwise the mesne descent cast would have barred his entry."

So it is said in Comyn's Digest T. Chancery (4 W., 25): "So though the breach of trust was passed, he who was guilty of the breach shall not take advantage of it." That tenants in common stand toward each other in the relation of trustees in respect to the common property, is laid down by the Supreme Court of the United States in Rothwell vs. Dewess, 2 Black, 619, in the following language: " The rule was based on a community of interest in a common title which created such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the other in reference to the property so situated."

Besides these considerations, which are of themselves decisive of the controversy in this case, there is the additional fact that if Henry Douglass were now allowed to set up his tax title against these complainants, he would acquire a property from them for less than two per cent. of its probable value. In other cases that would be thought reason enough to induce a court of equity to set aside any sale, however regular it might appear on its face, and I do not see any satisfactory reason why the courts should permit flagrant injustice to be perpetrated in a case merely because a man's property was sold for taxes without notice to him except by a publication in the supplement of a newspaper, which he may never have seen and in a form which might well mislead him if he had seen it, when there has been no

personal demand made upon the owner himself for payment, and no proceedings against him as for a personal obligation, and no seizure of the property itself, or demand made upon the premises, as is required in all other cases *in rem*, before the property can be sold, even under a decree of a court of justice.

On the whole matter it is necessary that the defendant be decreed to hold his tax title in trust for the common benefit, in order that injustice and iniquity should be defeated, and the complainants just rights protected.

The bill does not charge that the tax sale to Platt was itself void for irregularity or any other cause, and no evidence has been taken on that subject.

The Court is not therefore at liberty to decide that question. It can direct, however, that Henry Douglass on being repaid by the complainants their proper proportion of the amount paid by him to obtain this title, shall make and deliver to complainants, to be placed on the land records of the District, his deed declaring the trust agreeably to the decree.

It is also deemed proper that the defendant should be allowed his just proportion as one of the tenants in common for whatever permanent improvements he may have placed upon the property whilst in his possession, as well as his costs and expenses in the purchase of the tax title from Platt, and that he be charged on the other hand with a fair amount for his use and occupation of the lots, and that each party pay his own costs in this suit.